## UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
#### ORLANDO DIVISION

**UNITED STATES OF AMERICA**

**v.**                                               **CASE NO: 6:12-cr-121-Orl-37KRS**

**LUIS E. MORALES**

**In re: Petition of Linda M. Morales**

---

### REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the following motion filed

herein:

| | |
|---|---|
| **MOTION:** | **UNITED STATES' MOTION FOR SUMMARY JUDGMENT (Doc. No. 209)** |
| **FILED:** | **October 21, 2013** |

## I.   PROCEDURAL HISTORY.

On November 5, 2012, a jury convicted Luis E. Morales ("Luis Morales") of one count of

child sex trafficking, in violation of 18 U.S.C. § 1591(a), and five counts of transporting minors

in interstate commerce with the intent that they engage in sexual activity, in violation of

18 U.S.C. § 2423(a).   Doc. No. 116.   These crimes occurred between November 2009 and

January 2011.   *See* Doc. No. 57; Doc. No. 116; Doc. No. 213 at 5.

The Court then conducted the forfeiture phase of the trial, with the jury finding that

8 Crossings Trail, Ormond Beach, Florida ("the Property") was used or intended to be used to

commit or facilitate the commission of each of the offenses of conviction.   *See* Doc. No. 120;

Doc. No. 184 at 135-46.   Based on the jury verdict, the Court entered a preliminary order finding that Luis Morales forfeited his interest in the Property.   Doc. No. 124.   In the Judgment, the Court ordered that Luis Morales "shall forfeit [his] interest in the following property to the United States: those items previously identified in the Indictment that are subject to forfeiture."[1] Doc. No. 150 at 6.   On January 7, 2014, the United States Court of Appeals for the Eleventh Circuit affirmed Luis Morales's convictions.   Doc. No. 215.

On December 7, 2012, Linda M. Morales ("Linda Morales") petitioned the Court for an ancillary proceeding to adjudicate the validity of her interest in the Property, pursuant to 21 U.S.C. § 853(n) and Fed. R. Crim. P. 32.2.   Doc. No. 131.   In her petition, Linda Morales asserts that she holds complete legal and equitable title to the Property in fee simple and has held such title at all material times.   *Id.* at 1-2.   On referral, I granted in part Linda Morales's petition for an ancillary proceeding and deferred ruling on the merits of her assertions pending discovery and further briefing.[2]   Doc. No. 139.

After completion of discovery, the United States filed the above-referenced motion for summary judgment.   Doc. No. 209.   The United States asserts that the undisputed facts establish that it is entitled to judgment as a matter of law because Linda Morales did not have a vested right, title, or interest in the Property superior to Luis Morales's interest in the Property at the time of the commission of the crimes giving rise to the forfeiture.   The United States also

---

[1] "[T]he court must . . . include the forfeiture order, directly or by reference, in the judgment . . . ."   *See* Fed. R. Crim. P. 32.2(b)(4)(B).   If insufficient, the court may correct the judgment "at any time under [Federal Rule of Criminal Procedure] 36."   *Id.*

[2] The County of Volusia also filed an ancillary petition, claiming an interest in ad valorem taxes and non-ad valorem assessments against the Property.   Doc. No. 133.   The United States reached a settlement agreement with the County of Volusia (Doc. No. 153), and the Court adopted my Report and Recommendation (Doc. No. 157) denying the County of Volusia's petition and deferring the approval of the settlement agreement until all other ancillary claims are resolved (Doc. No. 194).

argues that the forfeiture of Luis Morales's interest in the Property does not violate Linda

Morales's rights under the United States Constitution.

In support of its motion for summary judgment, the United States submits the following:

- Copy of Deed for the Property, dated June 27, 1988 ("1988 Deed") (Doc. No. 209-1);

- Final Judgment of Dissolution between John D. Palfrey and Linda M. Palfrey (Doc. No. 209-2);

- Linda Morales's Response to First Set of Requests for Admission (Doc. No. 209-3);

- Copy of Application to Marry for Luis E. Morales and Linda M. Palfrey (Doc. No. 209-4);

- Copy of Quitclaim Deed for the Property, dated July 24, 2007 ("2007 Deed") (Doc. No. 209-5);

- Linda Morales's Response to Interrogatories (Doc. No. 209-6);

- Excerpts from the Transcript of Luis Morales's Jury Trial and Sentencing Hearing (Doc. Nos. 209-7, 209-8, 209-9, 209-13);[3]

- Copy of Quitclaim Deed for the Property, dated April 8, 2011 ("2011 Deed") (Doc. No. 209-10);

- Linda Morales's Response to First Set of Requests for Production (Doc. No. 209-11); and,

- Notice of Proposed Property Tax from Volusia County Appraiser's Office (Doc. No. 209-12).

---

[3] In ancillary proceedings, courts must consider evidence in the record in the underlying criminal case. 21 U.S.C. § 853(n)(5) (in ancillary proceedings, "the court shall consider the relevant portions of the record of the criminal case which resulted in the order of forfeiture."); *United States v. Cohen*, 243 F. App'x 531, 533-34 (11th Cir. 2007) (the district court properly considered testimony adduced at the preliminary forfeiture hearing) (unpublished decisions of the United States Court of Appeals for the Eleventh Circuit are cited herein as persuasive authority only).

Linda Morales responded in opposition to the United States' motion for summary judgment.   Doc. No. 213.[4]   In support of her response, she submits the following:

- Declaration of Linda M. Morales (Doc. No. 214 at 3-5), with exhibits: (A) copy of the 1988 Deed (*id.* at 6); (B) copy of Quit Claim Deed for the Property, dated October 18, 1990 ("1990 Deed") (*id.* at 7); and (C) copy of the 2011 Deed (*id.* at 8-9) (this document and its exhibits are cited throughout this Report and Recommendation as "Morales Dec."); and,

- Declaration of Allison G. Edwards (*id.* at 10-12), with exhibits: (A) copy of the 2007 Deed (*id.* at 13-14); and (B) copy of the 1990 Deed (*id.* at 15) (this document and its exhibits are cited throughout this Report and Recommendation as "Edwards Dec.").

The United States' motion for summary judgment was referred to me for issuance of a Report and Recommendation.   This motion is ripe for review.

## II.   STATEMENT OF FACTS.

On June 27, 1988, Linda Morales purchased the Property as a joint owner with John Palfrey ("Palfrey"), her then husband.   Doc. No. 209-1; Morales Dec. ¶ 2 & Ex. A thereto.   The 1988 Deed listed as the grantees "John D. Palfrey and Linda M. Palfrey, his wife."   *Id.*   In August 1990, Palfrey and Linda Morales divorced.   Doc. No. 209-2.   As part of the distribution of the marital property, Palfrey executed a quitclaim deed in October 1990 transferring his interest in the Property to Linda Morales.   The 1990 Deed names the grantee as Linda M. Palfrey.   Morales Dec. ¶ 3 & Ex. B thereto.   Thereafter, Linda Morales was responsible for paying the purchase money mortgage that encumbered the property.   *Id.* ¶ 4.   As of February 1999, Linda Morales had fully paid the mortgage from her own earnings.   *Id.* ¶ 7.

---

[4] In the conclusion of her response to the United States' motion for summary judgment, Linda Morales requested that summary judgment be entered in her favor.   Doc. No. 213 at 13.   It is not proper to include a request for affirmative relief in a response, because the rules of this Court do not permit a reply to be filed except by leave of Court.   Further, because Linda Morales did not indicate in the caption of the response that it was also a motion, the United States has not sought leave to file a reply.   For these reasons, Linda Morales's response will not be considered to be a motion for summary judgment.

In November 1997, Linda Morales married Luis Morales.   Doc. No. 209-4; Morales Dec. ¶ 5.   She and Luis Morales resided together at the Property from November 1997 until Luis Morales's arrest in 2012.   Doc. No. 209-3 ¶ 6; Doc. No. 209-6 ¶ 8; Morales Dec. ¶ 5.   While residing at the Property, Luis Morales had unrestricted access to the Property, maintained a key to the Property, and kept his belongings there.   Doc. No. 209-6 ¶ 8.

During the marriage, Linda Morales worked as an air traffic controller for the Federal Aviation Administration, eventually receiving a pension.   Morales Dec. ¶ 6.   Linda Morales was responsible for maintaining and improving the Property, and she paid all costs associated with the Property from her earnings.   Doc. No. 209-6 ¶ 12; Morales Dec. ¶ 6.   Luis Morales was rarely employed during the marriage, and he did not contribute any monies to pay the mortgage or repair and maintain the Property.   Morales Dec. ¶ 5.

Starting in 2001, Luis Morales and Linda Morales co-founded a ministry called En Fuego for Jesus (the "Ministry"). Doc. No. 182 at 213.   Luis Morales used the Property in the operation of the Ministry.[5]   Doc. No. 180 at 168; Doc. No. 209-6 ¶ 3.   Luis Morales ran the Ministry and was referred to as the apostle.   Doc. No. 180 at 250-51.   Linda Morales was the head prophet in the Ministry.   *Id.* at 61-62; Doc. No. 182 at 191, 213.   Among other things, the Property served as the mailing address for the Ministry.   Doc. No. 209-6 ¶ 2.   As part of the Ministry, Luis Morales conducted conferences and meetings on the Property, where people would sit and listen to his "teachings."   Sometimes members of the Ministry also attended the teachings by

---

[5] While the parties dispute the scope of Luis Morales's use of the Property to operate and support the Ministry, they both admit that he operated the Ministry and used the Property to support the operation of the Ministry in some fashion.   Doc. No. 209 at 4 (Luis Morales "ran his ministry, En Fuego for Jesus, from the Property."); Doc. No. 213 at 4-5 ("[A] ministry operated by Luis E. Morales utilized the premises.").   "A statement made in a brief filed by a party may be considered as an admission of fact."   *See Tucker v. Hous. Auth.*, 229 F. App'x 820, 826 (11th Cir. 2007) (citing *Young & Vann Supply Co. v. Gulf, Fla. & Ala. Ry. Co.*, 5 F.2d 421, 423 (5th Cir. 1925)).

telephone.   Doc. No. 180 at 168, 253-54.   The Ministry received money in the form of tithes

from its members.   Doc. No. 209-3 ¶ 14.   Some of the Ministry's money was used to pay for

telephone and internet service at the Property for a limited period of time.   Doc. No. 209-6 ¶ 9.

Luis Morales determined who would be a prophet in the Ministry.   Doc. No. 180 at 252.

Luis Morales told T.M., a minor, that she could become "one of the biggest prophets" in the

Ministry.   *Id.* at 58 (T.M. was fifteen years old when she testified at trial), 62.   Luis Morales

molested T.M. at the Property and elsewhere.   *See, e.g.*, *id.* at 63-64, 68-69, 70-71, 89-91.   T.M.

testified that Luis Morales told her she would go to heaven if she kept her mouth shut about the

molestation.   *Id.* at 91, 121.

Luis Morales also molested other minors, who were members of the Ministry, at the

Property.   *Id.* at 213-14; Doc. No. 181 at 71, 77-78, 96-97; Doc. No. 182 at 88-91.   Linda

Morales was not always physically present at the Property when Luis Morales molested minor

children.   *See, e.g.*, Doc. No. 180 at 89-91 & 160-61; Doc. No. 182 at 91.

In July 2007, Linda Morales became seriously ill and feared that she might die.   She

wished to arrange for the Property to pass to Luis Morales if she died.   Morales Dec. ¶ 8.   On

July 24, 2007, Linda Morales executed a quitclaim deed transferring the Property from the

grantor, "Linda M. (Palfrey) Morales," to the grantees, "Linda M. Morales and Luis Enrique

Morales."   Doc. No. 209-5; Doc. No. 214 at 13-14.   She signed the 2007 Deed in the name

Linda Marie Morales.   *Id.*   The 2007 Deed recites that "the said first party, for good

consideration and for the sum of 10.00 Dollars ($10.00) paid by the said second party, the receipt

whereof is hereby acknowledged, does hereby remise, release and quitclaim unto the said second

party forever, all the right, title, interest and claim, which the said first party has in and to the

[Property.]"   Doc. No. 209-5; Doc. No. 214 at 13-14.   The 2007 Deed was signed by two

witnesses and notarized.   It was then recorded with the Volusia County Clerk of Court on

July 25, 2007.   *Id.*   Linda Morales and Luis Morales orally agreed that Luis Morales would

only acquire an ownership interest in the Property if Linda died.   Morales Dec. ¶ 8.

By April 8, 2011, Linda Morales had recovered from her illness.   Morales Dec. ¶ 10.

On April 8, 2011, Luis and Linda Morales executed a quitclaim deed transferring the Property

from the grantors, "Linda M. (Palfrey) Morales and Luis Enrique Morales," to the grantee,

"Linda M. (Palfrey) Morales."   Doc. No. 209-10; Morales Dec. ¶ 10 & Ex. C thereto.   The

2011 Deed contained a blank space where "good consideration" for the exchange was to be

listed, but the document stamp at the top of the 2011 Deed states that the property was

transferred for $10.00.   *See* Doc. No. 209-10.   The 2011 Deed was signed by two witnesses and

notarized.   It was then recorded with the Volusia County Clerk of Court on April 13, 2011.   *Id.*

At the time of the execution of the 2011 Deed, no charges had been filed against Luis Morales.

*See* Doc. No. 1; Morales Dec. ¶ 5.

## III.   APPLICABLE LAW.

### A.   *Forfeiture.*

In the Superseding Indictment, the United States sought forfeiture of the Property

pursuant to 18 U.S.C. §§ 1594 and 2428.   Doc. No. 57 at 4-5.   The procedures in 21 U.S.C. §

853(n) apply to these criminal forfeiture proceedings.   28 U.S.C. § 2461.

Under § 853(n), "[a]ny person, other than the defendant, asserting a legal interest in

property which has been ordered forfeited to the United States," may petition the court for a

hearing in an ancillary proceeding to adjudicate the validity of the alleged interest.   21 U.S.C.

§ 853(n)(2).   The court must first determine whether the third-party petitioner has a legally

sufficient interest in the forfeited property to give her standing to challenge the forfeiture.

*See* 21 U.S.C. § 853(n)(2); *United States v. Lima*, Case No. 8:09-cr-377-T-17TBM, 2011 WL 5525339, at *3 (M.D. Fla. 2011), *adopted by* 2011 WL 5525354 (M.D. Fla. Nov. 14, 2011).

If a third-party petitioner has standing, then § 853(n) provides two ways by which the third-party petitioner may establish that she had an interest in forfeited property that defeats the government's interest in the forfeited property.   21 U.S.C. § 853(n)(6).   On the one hand, the third-party petitioner may show that:

> [she] has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property . . . .

21 U.S.C. § 853(n)(6)(A).   Alternatively, the third-party petitioner may show that she "is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonabl[y] without cause to believe that the property was subject to forfeiture . . . ." *Id.* § 853(n)(6)(B).   A third-party petitioner bears the burden of establishing that she has an interest in the forfeited property by a preponderance of the evidence.   *Id.* § 853(n)(6).

Ancillary forfeiture proceedings arise in the context of a criminal proceeding, but they are civil in nature.   *See* Fed. R. Crim. P. 32.2(c)(4); *Cohen*, 243 F. App'x at 534 (citing *United States v. Gilbert*, 244 F.3d 888, 907 (11th Cir. 2001)).   Accordingly, the Federal Rules of Civil Procedure and the Federal Rules of Evidence apply in ancillary proceedings and, after the close of discovery, a party may move for summary judgment.   Fed. R. Crim. P. 32.2(c)(1)(B); Fed. R. Evid. 1101; *United States v. Brown*, 509 F. Supp. 2d 1239, 1241 (M.D. Fla. 2007).

B.      *Summary Judgment.*

Summary judgment is available "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   It is the movant who "bears the initial burden of identifying for the district court those portions of the record 'which it believes demonstrate the absence of a genuine issue of material fact.'"   *Cohen v. United Am. Bank of Cent. Fla.*, 83 F.3d 1347, 1349 (11th Cir. 1996) (quoting *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1396 (11th Cir. 1994), *modified on other grounds*, 30 F.3d 1347 (11th Cir. 1994)).

Once the movant carries its initial burden, the non-movant may avoid summary judgment by demonstrating an issue of disputed material fact.   *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993).   The non-movant must provide more than a "mere 'scintilla' of evidence" supporting its position, and there must be enough of a showing that the factfinder could reasonably find for the non-movant.   *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)).

When analyzing a motion for summary judgment, a court draws all reasonable inferences from the evidence in the light most favorable to the non-movant and resolves all reasonable doubt in the non-movant's favor.   *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006) (citing *Lubetsky v. Applied Card Sys., Inc.*, 296 F.3d 1301, 1304 (11th Cir. 2002)).   The court does not make credibility determinations when ruling on a motion for summary judgment.   *See Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012) (citing *Anderson*, 477 U.S. at 255).

IV.    ANALYSIS.

A.    *Standing.*

Federal law decides what interests are subject to forfeiture, but state property law defines

what those interests are in the first instance.   *United States v. Fleet*, 498 F.3d 1225, 1231 (11th

Cir. 2007) (citing *United States v. Kennedy*, 201 F.3d 1324, 1334 (11th Cir. 2000)).   Thus, once

it is determined under state law that a third-party petitioner has a legal interest in the forfeited

property, the court looks to federal law to determine whether the third-party petitioner's interest

in the forfeited property is superior to the defendant's interest.   *United States v. Shefton*, 548

F.3d 1360, 1364 (11th Cir. 2008).

As a preliminary matter, the United States concedes that, at the time of the commission of

the crimes giving rise to the forfeiture, Linda Morales had a one-half interest in the whole of the

Property.   Doc. No. 209 at 8.[6]   The United States does not seek the forfeiture of Linda

Morales's one-half interest in the Property.   *Id.*   In light of the United States' concession that

Linda Morales has an interest in the Property, she has standing to challenge the forfeiture order

pursuant to § 853(n)(2).   *See* 21 U.S.C. § 853(n)(2); *Lima*, 2011 WL 5525339, at *3, *adopted by*

2011 WL 552534 (Section 853(n) provides that "only third parties with a legal interest in the

---

[6] Even though Linda Morales is now the sole owner of the Property, the United States can forfeit the interest in the Property, if any, that Luis Morales held at the time of the commission of the crimes of conviction under the "relation back" doctrine found in 21 U.S.C. § 853(c) ("All right, title, and interest in the [forfeitable] property . . . vests in the United States upon commission of the act giving rise to forfeiture . . . . Any such property that is subsequently transferred to a person other than the defendant may be the subject of a special verdict of forfeiture and thereafter shall be ordered forfeited to the United States, unless that transferee establishes . . . that he is a bona fide purchaser for value of such property who at the time of the purchase was reasonably without cause to believe that the property was subject to forfeiture . . . .").   Linda Morales does not contend that she was a bona fide purchaser for value of the Property based on the 2011 Deed conveying the Property from Linda Morales and Luis Morales to Linda Morales alone.

[forfeited] property may petition the court to adjudicate his or her interest in the forfeited

property.").

Accordingly, the only disputes remaining are whether and to what extent Luis Morales

had a legal right, title, or interest in the remaining one-half interest in the whole of the Property

at the time that he committed the crimes of conviction, and whether Linda Morales's right, title,

or interest in that remaining one-half interest in the whole of the Property, if any, was superior to

his interest.

        B.     *Luis Morales's Interest In The Property.*

The United States argues that the 2007 Deed created a valid tenancy by the entireties in

the Property held by Luis and Linda Morales and that this tenancy by the entireties continued

through the period of the crimes of conviction, November 2009 through January 2011.   Doc.

No. 209 at 9-11; *see also* Doc. Nos. 57, 116 and 213 at 5.   The United States submits that the

very nature of a tenancy by the entireties prevents Linda Morales from validly claiming that her

interest in the Property was superior to Luis Morales's interest in the Property.   *See Kennedy*,

201 F.3d at 1331 (quoting *United States v. Jimerson*, 5 F.3d 1453, 1455 (11th Cir. 1993)).

Linda Morales makes a number of arguments in response. Initially, she contends that the

copy of the 2007 Deed on which the United States relies is not a proper form of evidence under

Fed. R. Civ. P. 56.   She further submits that the 2007 Deed is invalid.   In the alternative, she

argues that the 2007 Deed did not convey a legal interest in the Property to Luis Morales.   I will

address these arguments in turn.

        1.     <u>Admissibility Of The 2007 Deed</u>.

Linda Morales argues that the United States cannot rely on the copy of the 2007 Deed

submitted in support of its motion because it is not properly sworn or certified as required by

Fed. R. Civ. P. 56.[7]   Notably, Rule 56 was amended in 2010 to remove the earlier requirement that only sworn statements could be used to support a motion for summary judgment. Under the current Rule, a motion for summary judgment may be supported by "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers or other materials[.]"   Fed. R. Civ. P. 56(c)(1)(A).   The current Rule permits the party opposing a motion for summary judgment to "object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."   Fed. R. Civ. P. 56(c)(2).

Linda Morales does not assert that the 2007 Deed could not be presented in a form that would be admissible in evidence at trial.   The Federal Rules of Evidence would permit a certified copy of the 2007 Deed to be admitted at trial.   *See* Fed. R. Evid. 803(14) and 902(4). Therefore, the copy of the 2007 Deed relied on by the United States may be considered in resolving the summary judgment motion.

2.     Whether The 2007 Deed Is Valid.

In Florida, an estate or interest of freehold is validly created or conveyed by a deed when (a) the instrument is in writing, (b) signed by the party creating or conveying the estate or interest, (c) in the presence of two subscribing witnesses.   Fla. Stat. § 689.01.   The title-holding spouse of real estate, including homestead, may create a tenancy by the entirety by conveying a deed to both spouses as joint holders of title.   Fla. Stat. § 689.11(1).   The Florida Constitution expressly permits homestead property to be conveyed in this manner.   See Fla. Const., art X, § 4(c).

---

[7] Linda Morales does not appear to contend that the 2007 Deed relied on by the United States is not authentic.   In her responses to requests for admissions, she admitted that a quit claim deed to "Linda M. Morales and Luis Enrique Morales" on or about July 24, 2007, was authentic.   Doc. No. 209-3 ¶ 3.

The 2007 Deed satisfies these requirements.   It is in writing, it is signed by Linda
Morales and it is subscribed to by two witnesses.   Nevertheless, Linda Morales argues that the
2007 Deed is invalid because (1) there are discrepancies in the names used to transfer title to the
Property; and, (2) she did not intend to make a gift of an interest in the Property to Luis Morales
and Luis Morales did not pay consideration to obtain an interest in the Property.   Neither of
these arguments is meritorious for the reasons discussed below.

      **a.**      **Discrepancies In The Names Used In Deeds Conveying The
Property.**

As discussed above, Linda Morales took title to the Property from her former husband,
John Palfrey, in the 1988 Deed, which listed the grantee as Linda M. Palfrey.   In the 2007 Deed,
Linda Morales, using the name Linda M. (Palfrey) Morales, conveyed the Property to Linda M.
Morales and Luis Enrique Morales.   She signed the 2007 Deed in the name Linda Marie
Morales.[8]   Linda Morales contends that the 2007 Deed is invalid because she used the name
Linda M. (Palfrey) Morales as the grantor, which is not the same name used in the 1988 Deed
conveying the Property to Linda M. Palfrey, and because she signed the 2007 Deed using the
name Linda Marie Morales, which name is not included in either deed.

In support of this argument, Linda Morales relies on the Declaration of Allison G.
Edwards.   Ms. Edwards avers that she is an attorney who practices real estate law.   She
formerly owned a title company and handled closings on sales of residential and commercial
property.   As such, she attests that she is familiar with many issues that can render property
deeds defective under Florida law and make a property transaction non-insurable.   Edwards
Dec. ¶¶ 3-4.   After reviewing the 1990 Deed and the 2007 Deed, Ms. Edwards opines that only

---

[8] She also used the name Linda Marie (Palfrey) Morales in the body of the deed.

Linda M. Palfrey, the grantee in the 1990 Deed, could have conveyed valid title to the Property through the 2007 Deed, because Linda M. Palfrey was the only person who acquired legal title to the Property through the 1990 Deed.   *Id.* ¶¶ 5-11.   She asserts that "Florida law requires strict compliance as to names.   If there is any possibility that the one later identified as the grantor may not be the same as the grantee originally described, the deed is invalid."   *Id.* ¶ 8.

Linda Morales cites *Barnett Bank of S. Fla., N.A. v. Westbrook Atkinson Realtors*, 564 So. 2d 570 (Fla. 4th Dist. Ct. App. 1990), as further support for Ms. Edwards's opinion.   The *Barnett Bank* case arose from a dispute about the name specified as the beneficiary of a letter of credit.   One of the terms of the letter of credit was that payment would be made upon delivery of a letter from the beneficiary, Edna May Walker.   Individuals who held powers of attorney executed by Edna Wilson Walker attempted to obtain payment under the letter of credit.   The Fourth District Court of Appeal found that the bank did not err in refusing to make payment under these circumstances because there was no "written or oral substantiation to explain that Edna *May* Walker and Edna *Wilson* Walker were one and the same."   *Id.* at 570.

In contrast to the facts in *Barnett Bank*, in the present case Linda Morales does not dispute that she was the grantee named in the 1990 Deed and that she was the grantor named in the 2007 Deed.   Rather, in her Declaration, she avers that, in 1990, John Palfrey, her former husband, transferred title to the Property to her.   Morales Dec. ¶ 3.   She further attests that, in 2007, she "attempted to arrange for [the Property] to pass to [Luis Morales]," and references the date of the 2007 Deed. *Id.* ¶ 8.   Therefore, there is no factual dispute presented in this case that Linda Palfrey, Linda M. (Palfrey) Morales, Linda Marie Morales and Linda Morales are the same person.   Under these circumstances, the differences in the names used do not invalidate the 2007 Deed.   *See, e.g.*, Fla. Uniform Title Standards, http://www.lawdb.com/Fl_Uniform_

Title_Standards.pdf, Standard 10.3 (last visited April 28, 2014) (woman may validly convey real property she acquired in her maiden name by using her married name as grantor, with reference to her maiden name);[9] *cf. Bacon v. Feigel*, 80 Fla. 566, 567-69 (Fla. 1920) (indicating that evidence of identity would be accepted to prove that grantee, Robert A. Bacon, was the same person as the subsequent grantor of the property, R.A. Bacon).

### b.   Failure Of Consideration And Lack Of Intent To Make A Gift.

Linda Morales also contends that the 2007 Deed is invalid because Luis Morales did not pay consideration for the conveyance of an interest in the Property to him and because she did intend to make a gift of an interest in the Property to Luis Morales.

The Florida Supreme Court has held "that a deed, sufficient in form, voluntarily executed by a competent grantor, is effective to convey the owner's legal title regardless of whether he receives a contractual consideration."  *Chase Fed. Sav. & Loan Ass'n v. Schreiber*, 479 So. 2d 90, 101 (Fla. 1985).  Linda Morales has not presented evidence that she did not execute the 2007 Deed voluntarily or that she was not competent when she executed the 2007 Deed. Therefore, the 2007 Deed is not invalid due to lack of payment of consideration by Luis Morales.

With respect to her lack of donative intent argument, Linda Morales relies on Florida case law interpreting section 61.075, Fla. Stat., which governs distribution of real property in marriage dissolution proceedings.  Section 61.075(6)(a)(2) states that all real property held by a husband and wife as tenants by the entireties shall be presumed to be a marital asset, but it permits a spouse making a claim to the contrary to present evidence that the real property was

---

[9] Florida courts have relied on the Uniform Title Standards in resolving disputes about the validity of deeds conveying real property.  *See, e.g., DGG Dev. Corp. v. Estate of Capponi*, 983 So. 2d 1232, 1234 (Fla. 5th Dist. Ct. App. 2008); *Cunningham v. Haley*, 510 So. 2d 649, 653 n.3 (Fla. 5th Dist. Ct. App. 1986).

acquired before the marriage and is not a marital asset because the grantor-spouse did not intend to make a gift of an interest in the property to the grantee-spouse. *See, e.g.*, *Hill v. Hill*, 675 So. 2d 168, 170 (Fla. 5th Dist. Ct. App. 1996). If the grantor-spouse meets the burden of proving that the property is not a marital asset, the grantor-spouse is determined to have a "special equity" in the real property and the real property will be distributed to the grantor-spouse in the final judgment dissolving the marriage.[10]

Linda Morales has not cited any case in which section 61.075 has been applied in federal criminal forfeiture proceedings to permit a spouse to rely on extrinsic evidence to establish that she did not intend to make a gift of real property to her spouse and, therefore, that she should be awarded a "special equity" in real property held in a tenancy by the entireties while the parties are still married. Furthermore, "'Congress expressly preempted state law in the language of 21 U.S.C. section 853(a) (Supp. 1984), . . . by providing for criminal forfeiture of property, 'irrespective of any provision of State law,' if that property was [subject to forfeiture].'" *Kennedy*, 201 F.3d at 1334 n.16 (quoting *United States v. 15621 S.W. 209th Ave.*, 894 F.2d 1511, 1518 (11th Cir. 1990)).

In *Kennedy*, the court considered a previous finding by a Florida divorce court that the convicted defendant's wife had a "special equity" in real property that was the subject of criminal ancillary forfeiture proceedings. In that case, the trial court ordered that Byron Kennedy, the convicted defendant, forfeit his interest in real property, specifically a beach house that he and his former wife held as tenants by the entireties at the time the crime giving rise to

---

[10] "In the 2008 amendments to section 61.075, a 'special equity' was abolished in favor of the concept of 'unequal distribution of a marital asset.'" *Foley v. Foley*, 19 So. 3d 1031, 1032 n.2 (Fla. 5th Dist. Ct. App. 2009) (citing *In re Amendments to the Fla. Family Law Rules of Procedure*, 987 So.2d 65 (Fla. 2008)).

the forfeiture was committed.  *Id.* at 1326-27.   Defendant Kennedy's former wife, Mrs.

Kennedy, made a claim to the real property in the ancillary criminal forfeiture proceedings.   In

support of her claim, she relied on the Florida state court divorce decree dissolving her marriage

with Defendant Kennedy.   In that divorce decree, the state court judgment adopted the parties'

agreement that Mrs. Kennedy should be awarded the beach house because she had a special

equity in that real property.  *Id.* at 1328.   The Eleventh Circuit took "due notice of the state

divorce court's award of a special equity" in the real property.  *Id.* at 1334.   It found that

because the special equity interest arose after the time of the commission of the criminal acts that

gave rise to the forfeiture, it did not support a finding that Mrs. Kennedy had a superior interest

in the real property before the crime giving rise to the forfeiture occurred.   More importantly for

purposes of the present case, the Eleventh Circuit wrote as follows:

> Third parties can argue that they held superior title at the time of the act giving
> rise to the forfeiture, or that they are bona fide purchasers for value.   They cannot
> argue, however, that a state divorce court awarded them a special equity in the
> forfeited property; there is no "special equity" provision in section 853(n)(6).

*Id.*

Therefore, Linda Morales's argument that she is entitled to present extrinsic evidence that

she did not have a donative intent when she executed the 2007 Deed fails because section 61.075

does not apply in the circumstances of this case.   Rather, the controlling law is that extrinsic

evidence cannot be relied upon to undermine the unambiguous terms of the 2007 Deed.

*Foucart v. Paul*, 516 So. 2d 1035, 1036-37 (Fla. 5th Dist. Ct. App. 1987).

3.   The Interest, If Any, Linda Morales Conveyed To Luis Morales Through The 2007 Deed.

Linda Morales argues, in the alternative, that if the 2007 Deed is admissible and valid, it

did not convey any legal interest in the Property to Luis Morales.   In support of this argument,

she asserts that (1) the 2007 Deed transferred only a conditional interest in the Property in the event of her death; and, (2) Luis Morales held only "bare legal title," which was insufficient to give him a legal interest in the Property.   Neither of these arguments is meritorious for the reasons discussed below.

> **a.      Conditional Transfer Of An Interest In Property In The Event Of Linda Morales's Death.**

In her "conditional interest" argument, Linda Morales appears to assert that the 2007 Deed did not convey any legal interest in the Property to Luis Morales while Linda Morales was still living.   In support of this argument, she relies on her averment that she and Luis Morales had an oral agreement that the 2007 Deed would convey an interest in the Property to Luis Morales only in the event of Linda's death.

In Florida, "[w]here real property is acquired specifically in the name of a husband and wife, it is considered to be a 'rule of construction that a tenancy by the entireties is created, although fraud may be proven.'"   *Beal Bank, SSB v. Almand & Assocs.*, 780 So. 2d 45, 54 (Fla. 2001) (quoting *First Nat'l Bank of Leesburg v. Hector Supply Co.*, 254 So. 2d 777, 780 (Fla. 1971)).   "In addition, in the case of real property, the owners do not need to be described as husband and wife in the deed and their marital relationship does not need to be referred to in the deed in order to establish a tenancy by the entireties."   *Id.* at 54 n.9 (citing *Am. Central Ins. Co. of St. Louis, Mo. v. Whitlock*, 122 Fla. 363, 366 (Fla. 1936)).   The presumption that the grantor-spouse intended to create a tenancy by the entireties by conveying real property to herself and her husband is not rebuttable.   *See Losey v. Losey*, 221 So. 2d 417, 419 (Fla. 1969).   Therefore, "it matters not what extrinsic evidence may exist of the husband and wife's contrary intentions in titling the deed in their names . . . . Only in the case of fraud does an exception to this rule exist."

*Roberts-Dude v. JP Morgan Chase Bank, N.A.*, 498 B.R. 348, 355 (S.D. Fla. 2013). There is no allegation or evidence that Linda Morales executed the 2007 Deed through fraud.

In *Foucart*, the Fifth District Court of Appeal considered an argument similar to that presented here. In that case, a grantor who owned a one-half interest in real property executed a quit-claim conveying his one-half interest in property to himself and a grantee who owned the other one-half interest in real property. The grantor submitted that the conveyance was based on the oral agreement between himself and the grantee that the conveyance of the property was a conditional gift and that property would remain in their joint names until the death of the first one of them, at which time the property would be owned solely by the survivor. *Foucart*, 516 So. 2d at 1036. In alleged violation of the oral agreement, the grantee conveyed her interest in the property to another person while the grantor was still living. The grantor brought a lawsuit asking the court to set aside the grantee's conveyance based on the violation of the oral agreement. The trial court found in favor of the grantor based on the oral agreement, but the decision was reversed on appeal. The Fifth District Court of Appeal wrote that "[t]he parol evidence rule provides that the clear and unambiguous terms of a deed cannot be varied by a prior or contemporaneous verbal agreement." *Id.* at 1036-37. Because the deed conveying the property from the grantor to himself and the grantee was unambiguous, the court found that the conveyance created a joint tenancy with right of survivorship. *Id.* at 1036-37. Under these circumstances, the grantee's conveyance of her interest in the property was valid. *Id.* at 1037.

In the present case, the 2007 Deed is unambiguous: Linda Morales conveyed to Luis Morales "forever, all the right, title, interest and claim, which [Linda Morales] has in and to" the Property. Doc. No. 209-5 at 1-2. There is no express language in the 2007 Deed stating that Linda Morales intended to convey only a contingent or conditional interest in the Property. *See*

*In re Estate of Suggs*, 405 So. 2d 1360, 1361 (Fla. 5th Dist. Ct. App. 1981) ("A conveyance to spouses as husband and wife creates an estate by the entirety *in the absence of express language showing a contrary intent* [emphasis added].").   Under these circumstances, the parol evidence rule prohibits the Court from considering extrinsic evidence of the oral agreement between Linda and Luis Morales to undermine the unambiguous language of the 2007 Deed.

### b.        Bare Legal Title.

Linda Morales also asserts that because Luis Morales held only "bare legal title" to the Property, he did not have any legal interest in the Property.   All of the cases she cites in support of this proposition address whether a petitioner in an ancillary forfeiture proceeding was merely a nominee – that is, a possessor of bare legal title – who lacked a legal interest in the forfeited property sufficient to confer standing to make a claim the forfeited property. Doc. No. 213 at 10 (citing *United States v. 5000 Palmetto Drive*, 928 F.2d 373 (11th Cir. 1991); *United States v. Tyrell*, Case No. 8:02-cr-111-T-17MAP, 2012 WL 5989344, *4-5 (M.D. Fla. Nov. 29, 2012); *United States v. 3340 Stallcup*, 781 F. Supp. 1200 (N.D. Tex. 1991)).

Nevertheless, in ancillary forfeiture proceedings the Court must determine what legal interest, if any, Luis Morales had in the Property at the time of the commission of the crimes giving rise to the forfeiture.   "[A] person or entity cannot have a vested interest in property if that person or entity is found to be acting as a nominee for someone who[se] property is subject to the forfeiture.'"   *United States v. Weiss*, 791 F. Supp. 2d 1183, 1200 (M.D. Fla. 2011) (quoting *United States v. Weiss*, 467 F.3d 1300, 1308-09 (11th Cir. 2006)).   A district court looks to the law of the state where the property is located to determine whether a person has a legal right to the forfeited property.   *Id.*

Florida law presumes that the person whose name appears on a legal title is the property's owner.  *United States v. Hovind*, No. 3:06cr83/MCR, 2009 WL 2369340, at *4 (N.D. Fla. July 29, 2009) (citing *Hagopian v. Zimmer*, 653 So. 2d 474, 475 (Fla. 3d Dist. Ct. App. 1995)).   This presumption is rebuttable.  *Id.* (citing *Morales v. Coca-Cola Co.*, 813 So. 2d 162, 166 n.2 (Fla. 4th Dist. Ct. App. 2002)).   Florida law looks to who had dominion and control over Florida property in deciding true ownership.  *Id.* (citing *Wilson Cypress Co. v. Logan*, 160 So. 489, 491 (Fla. 1935); *Wilson v. Burke*, 53 So. 2d 319, 320-21 (Fla. 1951); *Broward Cnty. v. Eller Drive Ltd. P'ship*, 939 So. 2d 130, 133 (Fla. 4th Dist. Ct. App. 2006)); *see also Mikos v. King's Gate Club, Inc.*, 426 So. 2d 74, 76 (Fla. 2d Dist. Ct. App. 1983).

Florida law does not clearly delineate the factors to be considered in determining whether an individual exercised dominion and control over real property.   In determining exercise of dominion and control over real property in criminal forfeiture proceedings, this Court has determined that a claimant who acquired title to real property from her parents, who did not reside at the property, who did not make the day-to-day decisions about the property, and who paid expenses for maintenance of the property from funds provided by her mother was a mere nominee.  *See, e.g.*, *Weiss*, 791 F. Supp. 2d at 1200-01.   In a civil forfeiture proceeding, the United States District Court for the Southern District of Florida determined that the son of the claimant and another person exercised dominion and control over real property and that the claimant was a mere nominee.   In reaching this conclusion, the court considered that the claimant's son and another person purchased the real property with proceeds from drug sales, that title to the property was transferred to the claimant "for money laundering purposes," that the claimant's son and the other purchaser had keys to the property, came and went as they pleased, brought guests, including business associates, to the property, and that the claimant

resided at the property "subject to the discretion and whim or her son."   *United States v. 298 N.W. 45th Street*, 804 F. Supp. 319, 324 (S.D. Fla. 1992).

In the present case, the undisputed evidence establishes that Linda Morales acquired the Property from her former husband, John Palfrey, and that she paid the mortgage and other expenses of the Property from her salary.   Luis Morales did not make any financial contributions to the purchase or expenses of the Property, other than paying costs of internet and telephone services from funds of the Ministry.   Linda Morales conveyed the Property to herself and Luis Morales in the 2007 Deed.   These facts all weigh in favor of a finding that Linda Morales exercised dominion and control over the Property.

Other facts, however, establish that Luis Morales also exercised dominion and control over the Property.   Luis Morales acquired a legal interest in the Property through the 2007 Deed. Luis Morales lived at the Property with Linda Morales from the date of their marriage in 1997 until his arrest in 2012.   During that time, Luis Morales had a key to the Property and kept his personal belongings there.   Beginning in 2001, Luis Morales operated the Ministry from the Property, including receiving mail at the Property and conducting "teachings" at the Property, both in person and telephonically.   Luis Morales had unfettered access to the Property, including at times when Linda Morales was not present at the Property.   Evidence presented at the criminal trial established beyond a reasonable doubt that Luis Morales used the Property to molest minor children in violation of criminal laws of the United States.   Luis Morales also exercised control over the Property by conveying his interest in the Property to Linda Morales in 2011, after the crimes he committed had occurred.

The undisputed facts establish that both Linda Morales and Luis Morales exercised dominion and control over the Property. Therefore, each of them had a vested ownership interest

in the Property at the time of the commission of the crimes giving rise to the forfeiture.   As

such, Luis Morales was not a mere nominee who held only "bare legal title" to the Property.

      4.      <u>In Sum, The 2007 Deed Is Valid And Conveyed A Legal Interest</u>
<br>                  <u>In The Property To Linda And Luis Morales As Tenants By The Entireties.</u>

For the reasons discussed above, the governing law and the undisputed facts, taken in the

light most favorable to Linda Morales, establish that the 2007 Deed is proper evidence under

Rule 56.   Under the governing law in Florida, the 2007 Deed is valid.   Finally, under the

governing law and the facts, taken in the light most favorable to Linda Morales, the 2007 Deed

conveyed a legal interest in the Property to Linda and Luis Morales as tenants by the entireties

under which Linda and Luis Morales each held an indivisible interest in the whole of the

Property.   *Beal Bank*, 780 So. 2d at 52 n.7 (Fla. 2001).   This legal interest existed until Linda

and Luis Morales conveyed the Property to Linda Morales alone through the 2011 Deed, which

was executed after the last date that the crimes of conviction occurred.

Accordingly, at the time of the commission of the crimes giving rise to the forfeiture,

Linda Morales and Luis Morales held the Property as tenants by the entireties.   "'[T]he very

nature of the tenancy by the entireties prevents [a petitioner] from claiming that her title is

superior to her [spouse's title] . . . .'"   *Kennedy*, 201 F.3d at 1331 (quoting *Jimerson*, 5 F.3d at

1455).   Accordingly, Linda Morales cannot prevail on her claim that she held an interest in the

Property that was superior to that of Luis Morales at the time of the commission of the crimes

giving rise to the forfeiture of Luis Morales's interest in the Property.

      C.      *Linda Morales's Constitutional Claims.*

Linda Morales also raises five constitutional challenges to the forfeiture of the Property.

She has conceded that courts have rejected each of her arguments, but she asserts them to

preserve the issues for possible future appeal.   Doc. No. 213 at 11-12.

First, Linda Morales argues that there is not a nexus between the Property and the crimes of conviction.  *Id.*   Her argument fails because she cannot challenge the jury's determination that the Property was used or intended to be used to commit or facilitate the commission of the crimes of conviction.  *See United States v. Davenport*, 668 F.3d 1316, 1321 (11th Cir. 2012) ("third parties . . . may not relitigate the merits of a forfeitability determination").

Second, Linda Morales argues that she was deprived of her right to due process because she could not intervene in the criminal trial to protect her interest in the Property.   Doc. No. 213 at 12.   Her argument fails because the ancillary proceedings under § 853 provide constitutionally adequate due process.   *See United States v. Holy Land Found. for Relief & Dev.*, 493 F.3d 469, 477-78 (5th Cir. 2007).

Third, Linda Morales argues that the forfeiture of the Property would be an unconstitutional taking because Luis Morales gave no consideration for his interest in the Property.   Doc. No. 213 at 12.   Her argument fails because the Takings Clause of the Fifth Amendment does not apply to property forfeited pursuant to criminal statutes.   *See Bennis v. Michigan*, 516 U.S. 442, 452 (1996) (stating that the government is not required to compensate owners of property that it has "lawfully acquired under the exercise of governmental authority other than the power of eminent domain").

Fourth, Linda Morales argues that, because she paid for the Property, any taking of it by the United States would be a penalty violating the Eighth Amendment prohibition against cruel and unusual punishment.   Doc. No. 213 at 12.   Her argument fails because the Eighth Amendment prohibition against cruel and unusual punishment does not apply to forfeitures. *United States v. Young*, Case No. 5:96-CR-2 (DF), 2001 WL 1644658, at *1 (M.D. Ga. Dec. 21, 2001).

Fifth, Linda Morales argues that she has a right to a jury trial, and that this right has been denied to her in the criminal proceeding and in this ancillary proceeding.   Doc. No. 213 at 12-13.   Her argument fails because, as discussed *supra*, she had no constitutional right to be a part of the underlying criminal proceeding.   If the Court determines that the United States' motion for summary judgment should be denied, Linda Morales will have the opportunity to assert her demand for a jury trial at that time.

## V.      RECOMMENDATION.

Based on the foregoing report, I respectfully recommend that the United States' Motion for Summary Judgment (Doc. No. 209) be **GRANTED**.   If the Court adopts this recommendation, I further respectfully recommend that the Court **APPROVE** the settlement of the County of Volusia's ancillary petition and **ENTER** a final order and judgment of forfeiture, pursuant to Fed. R. Civ. P. 32.2(c)(2).

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on April 30, 2014.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy