UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LUIS E. MORALES,

      Petitioner,

v.                                  CASE NO. 6:15-cv-636-Orl-37KRS
                                       (6:12-cr-121-Orl-37KRS)

UNITED STATES OF AMERICA,

      Respondent.

_____

## <u>ORDER</u>

This case involves an amended motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 filed by Luis E. Morales ("Petitioner") (Doc. 5). The Government filed a response (Doc. 16) to the amended motion. Petitioner filed a reply to the response (Doc. 20).

Petitioner asserts eight grounds for relief. For the following reasons, the amended motion is denied.

## I.    PROCEDURAL HISTORY

Petitioner was charged by superseding indictment with one count of aiding and abetting in the sex trafficking of a minor, T.M., (Count One) in violation of 18 U.S.C. §§ 1591(a) and 2; two counts of aiding and abetting in transporting a minor, T.M., in interstate commerce with the intent to engage in sexual activity (Counts Two and Three) in violation of 18 U.S.C. §§ 2423(a) and 2; and three counts of transporting a minor, M.R.,

in interstate commerce with the intent to engage in sexual activity (Counts Four, Five, and Six) in violation of 18 U.S.C. § 2423(a).   (Criminal Case No. 6:12-cr-121-Orl-37KRS, Doc. 57).[1]   A jury convicted Petitioner of all counts.   (Criminal Case Doc. 150).   The Court sentenced Petitioner to concurrent terms of life in prison.   (*Id.*).

Petitioner appealed his convictions.   The Eleventh Circuit Court of Appeals affirmed.   (Criminal Case Doc. 215).   The Supreme Court of the United States denied certiorari review.   (Doc. 16-8).

## II.   LEGAL STANDARD

The Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.   *Id.* at 687-88.   A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.   *Id.* at 689-90.   "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."   *Id.* at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective

---

[1] Criminal Case No. 6:12-cr-121-Orl-37KRS will be referred to as "Criminal Case."

assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial.   Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight.   *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy.   We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted).   Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."   *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

## III.   ANALYSIS

### A.   Grounds One and Three

In Ground One, Petitioner asserts one of his attorneys, Kenneth N. Weaver, Jr. ("Weaver"), labored under an actual conflict of interest because he was a potential witness in the Government's witness tampering investigation.   (Doc. 5 at 4-7). According to Petitioner, based on the conflict of interest, counsel *inter alia* failed to talk to key defense witnesses.   (*Id.* at 7).   Petitioner further argues that this Court erred in not requiring counsel to withdraw in light of the actual conflict.   (*Id.* at 4).   Similarly, Petitioner maintains in Ground Three that Mr. Weaver's conflict of interest caused him not to sufficiently question Michael A. Avery, Jeffrey Beaupre, Kathryn Paxi-Johnson, Manuel Rivera, Kayla Beaupre, Prophet Stella, Audra Avery, and Linda Morales "about

the phone calls to the witnesses about tampering in the government case and about the rape of the girls."   (*Id.* at 13-14).   Petitioner also asserts Mr. Weaver should have called Petitioner and experts to testify at trial.[2]   (*Id*. at 14).

Grounds One and Three are precluded by Petitioner's knowing, intelligent, and voluntary waiver of his right to conflict free counsel.   Alternatively, Petitioner has not shown either an actual conflict of interest or that the purported conflict adversely affected counsel's performance.

As explained by the Eleventh Circuit Court of Appeals,

> A defendant "may waive this conflict of interest and elect to have the attorney continue representation, so long as that waiver is knowing, intelligent, and voluntary."   *United States v. Ross,* 33 F.3d 1507, 1524 (11th Cir.1994).   Absent such a waiver, "a defendant is entitled to representation free of actual conflict." *United States v. Khoury,* 901 F.2d 948, 968 (11th Cir.1990).   "A speculative or hypothetical conflict," however, "does not violate the Constitution."   *Id.*   A defendant must show that his lawyer "actively represented conflicting interests," and that "the actual conflict had an adverse effect upon his lawyer's representation."   *Id.* (quotation marks omitted).   He must be able to "point to specific instances in the record to suggest an actual conflict or impairment of [his] interest."   *Id.; see also United States v. Mers,* 701 F.2d 1321, 1328 (11th Cir. 1983) (stating that a defendant "must make a factual showing of inconsistent interests and must demonstrate that the attorney made a choice between alternative courses of action"; otherwise "the conflict remain[s] hypothetical").

*United States v. Rahman*, 647 F. App'x 955, 956–57 (11th Cir. 2016).   To ensure that a defendant's waiver of conflict free counsel is knowing, intelligent, and voluntary, the

---

[2] To the extent Petitioner argues that counsel rendered ineffective assistance by advising him not to testify, this claim will be addressed in Ground Four *infra*.

district court "should address each defendant personally and forthrightly advise him of the potential dangers of representation by counsel with a conflict of interest." *United States v. Garcia*, 517 F.2d 272, 278 (5th Cir. 1975), *abrogated by Flanagan v. United States*, 465 U.S. 259 (1984).   In addition, the defendant should be permitted to question the court regarding "the nature and consequences of his legal representation."   *Id*.   Most importantly, the district court:

> should seek to elicit a narrative response from each defendant that he has been advised of his right to effective representation, that he understands the details of his attorney's possible conflict of interest and the potential perils of such a conflict, that he has discussed the matter with his attorney or if he wishes with outside counsel, and that he voluntarily waives his Sixth Amendment protections.

*Id.*

Prior to trial, the Government filed a motion to determine conflict of interest as to Mr. Weaver.   (Criminal Case Doc. 64).   The Court conducted a *Garcia* hearing in relation to the motion.   *See* Criminal Case Doc. 178.   Petitioner retained Rajan Joshi ("Joshi") as counsel to assist him at the *Garcia* hearing.   (*Id.* at 8).

At the hearing, the prosecutor explained that information had come to the Government's attention that Petitioner; Linda Morales, Petitioner's wife; Manuel Rivera, the husband of Petitioner's co-defendant Rebecca Rivera; and other individuals affiliated with Petitioner's ministry had been threatening the victims and their families.   (*Id.* at 4). According to the prosecutor, Linda Morales had told a family member of a victim that she intended to provide lascivious pictures of the victim to Mr. Weaver.   (*Id.* at 5).

As a result, a grand jury investigation had been launched regarding witness tampering, and the Government anticipated Mr. Weaver would be a witness in the investigation. (*Id.*).  The Government, therefore, was concerned that Mr. Weaver's duty of loyalty might be implicated because he might have to testify adverse to Petitioner's interest in the witness tampering investigation.  (*Id.* at 6).  The prosecutor further noted that Mr. Weaver's involvement in the investigation could possibly be made known at trial via witnesses' testimony so as to adversely affect Petitioner.  (*Id.* at 7).

Mr. Joshi questioned Mr. Weaver about his representation of Petitioner.  Mr. Weaver denied ever instructing anyone to threaten any of the witnesses and said he told Linda Morales that absent a court order, she could speak with the witnesses on both sides of the case if they were willing so long as she did not tamper with or threaten the witnesses.  (*Id.* at 9-10).  Mr. Weaver acknowledged he had a duty of loyalty to Petitioner and was willing to represent him as lead counsel unless his representation violated the rules or he was prohibited by the Court from doing so.  (*Id.* at 12).  Mr. Weaver said Mr. Joshi could help alleviate possible conflicts by communicating with and questioning Linda Morales if necessary.  (*Id.* at 12-13).  Mr. Weaver denied knowing any self-interest he had that weighed against Petitioner's interest.  (*Id.* at 14).

The Court subsequently explained to Petitioner that he had the right to representation by counsel who does not have any conflict, meaning an attorney who could represent Petitioner fully without any divided loyalty.  (*Id.* at 15).  Petitioner

6

affirmed he understood he had the right to conflict free counsel.   (*Id.* at 15-19).   The Court then reiterated the potential conflict Mr. Weaver may have, as outlined by the Government, and explained that the potential existed for the conflict to adversely impact Petitioner's case at trial.   (*Id.* at 15-16).   Petitioner affirmed he understood this and indicated that he believed his attorney would not have any problems representing him fully.   (*Id.* at 17-18).   Petitioner also affirmed that Mr. Joshi had discussed Mr. Weaver's potential conflict with Petitioner prior to the hearing.   (*Id.* at 18).   Petitioner indicated he was confident in Mr. Joshi's representation and that he wanted Mr. Weaver to continue to represent him with the assistance of Mr. Joshi.   (*Id.*).   Mr. Joshi told the Court that he had thoroughly explained the matters raised by the Government to Petitioner, and he indicated that he would be at trial to examine any witnesses if Mr. Weaver's involvement became an issue.   (*Id.* at 22-23).

The Court then explained to Petitioner that he had the right to waive his right to conflict free counsel, but if he did so, he would be giving up his right to later claim that Mr. Weaver was unable to effectively represent him.   (*Id.* at 19).   Petitioner affirmed he understood this, reiterating in his own words that "later on I cannot tell you or said [sic] that he didn't do a good job because I'm waiving that [right]."   (*Id.*).   The Court continued to explain to Petitioner possible scenarios that could occur based on the potential conflict, including that Mr. Weaver could be mentioned at trial during the Government's cross-examination of witnesses in relation to witness tampering.   (*Id.* at

20-21, 25-26).   Petitioner affirmed that he understood that such a scenario would not be good for his defense.   (*Id.*).   Nevertheless, Petitioner indicated that he still wanted Mr. Weaver to continue as his attorney.   (*Id.* at 22, 28).

Before the Court ruled on the matter, Petitioner explained in his own words the possible conflict, his right to conflict free counsel, and that by waiving his right to conflict free counsel, he would be waiving his right to contend Mr. Weaver was ineffective because of a conflict.   (*Id.* at 30-32).   Thereafter, the Court determined that Petitioner had knowingly, intelligently, and voluntarily waived the conflict of interest and elected to proceed with Mr. Weaver.   (*Id.* at 32).

It is clear that Petitioner was able to understand and respond to the Court's questions and summarize the issues in his own words.   From Petitioner's representations to this Court, he understood his right to effective representation, understood the details of Mr. Weaver's possible conflict of interest and the potential perils of such conflict, had discussed the matter with Mr. Joshi and Mr. Weaver, and voluntarily waived his Sixth Amendment protections.   Consequently, the Court properly allowed Mr. Weaver to continue representing Petitioner, and Petitioner waived his right to complain about Mr. Weaver's purported conflict.[3]

---

[3] To the extent Petitioner argues he was not competent to waive his right to conflict free counsel because of his reference to Jesus Christ being his number one attorney and because of his diabetes, these arguments are unavailing as discussed more fully in Ground Two *infra*.

Alternatively, Petitioner has not established that Mr. Weaver had an actual conflict or that the purported conflict adversely affected Petitioner.   There is no indication that Mr. Weaver was called as a witness in the Government's investigation.   There also was no evidence presented at trial that there was a witness tampering investigation, or any evidence implicating Mr. Weaver in the Government's investigation.   Moreover, Linda Morales, Jeffrey Beaupre, Manuel Rivera, Kayla Beaupre, Prophet Stella, and Audra Avery were called as witnesses by either Petitioner or his co-defendant at trial, and they were thoroughly questioned by Petitioner's attorneys.   Any arguable conflict was negated by Mr. Joshi's questioning of Linda Morales, Manuel Rivera, Prophet Stella, Jeffrey Beaupre, and Audra Avery.

Kathryn Paxi-Johnson was not called as a witness.   Furthermore, neither Mr. Weaver nor Mr. Joshi cross-examined Michael A. Avery, a witness for Petitioner's co-defendant.   Petitioner, however, has not demonstrated what testimony Kathryn Paxi-Johnson would have provided or how her testimony would have benefited his defense. Petitioner also does not indicate what additional testimony Michael A. Avery would have provided that would have benefited his defense.   In addition, Petitioner has not established what testimony an "expert" would have provided that would have benefited his defense.   Moreover, Petitioner knew that the decision of whether to testify was his alone to make, and he chose not to testify.   (Criminal Case Doc. 183 at 27-28).

Finally, the evidence of Petitioner's guilt was substantial.   Mr. Weaver and Mr.

9

Joshi thoroughly cross-examined the Government's witnesses and Petitioner's co-defendant's witnesses, objected to evidence, called and thoroughly questioned defense witnesses, and argued various legal points throughout the trial.   Mr. Weaver and Mr. Joshi vigorously defended Petitioner.   For all of the foregoing reasons, Petitioner has not demonstrated that Mr. Weaver had an actual conflict of interest or that the purported conflict had an adverse effect upon Mr. Weaver's representation of Petitioner.   Likewise, Petitioner has not established deficient performance or prejudice in relation to counsel's alleged failure to sufficiently question witnesses.   Accordingly, Grounds One and Three are denied.

## B.    Ground Two

Petitioner contends counsel rendered ineffective assistance by failing to request a competency hearing.   (Doc. 5 at 8).   Petitioner further contends that the Court should have ordered a competency exam.   (*Id.* at 9).   According to Petitioner, he was not able to consult with counsel with a rationale degree of understanding of the proceedings against him.   (*Id.*).   In support of his contention, Petitioner relies on his statement at the *Garcia* hearing that Jesus Christ was his number one attorney.   (*Id.*).   In his Reply, Petitioner further argues that counsel should have known that Petitioner was a severe diabetic and that his medical condition caused his "religious delusions."   (Doc. 20 at 4-6).

A criminal defendant must be mentally competent to stand trial.   *Drope v. Missouri*, 420 U.S. 162 (1975).   "The legal test for mental competency is whether, at the

time of trial and sentencing, the petitioner had 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and whether he had 'a rational as well as factual understanding of the proceedings against him.'"   *Adams v. Wainwright*, 764 F.2d 1356, 1360 (11th Cir. 1985) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)).

In analyzing a claim that counsel rendered ineffective assistance by failing to obtain a psychological examination to assess the defendant's competency to stand trial or conduct a defense, courts must consider whether a reasonable attorney should have been on notice that such an exam was necessary.   *See, e.g., Devier v. Zant,* 3 F.3d 1445, 1451 (11th Cir. 1993) (concluding that "the failure of [the defendant's] attorneys to introduce psychological evidence as to how [the defendant's] general mental status affected the voluntariness of his confession does not amount to ineffective assistance of counsel"). To establish prejudice resulted from counsel's failure to investigate and pursue a claim of incompetency, the petitioner must demonstrate that "a real, substantial, and legitimate doubt" existed concerning his mental competency at the time of trial.   *Adams*, 764 F.2d at 1367 (concluding that "[s]ince the requisite doubt has not and apparently could not have then been raised, the attorney's conduct in investigating and his decision not to pursue a claim of incompetency did not result in prejudice"); *see also Oats v. Singletary,* 141 F.3d 1018, 1025 (11th Cir. 1998) (concluding that the defendant failed to demonstrate prejudice based on counsel's failure to adequately argue he was incompetent to proceed

because the defendant failed to show that "there [was] a reasonable probability that the trial judge would have determined that [he] was incompetent to stand trial").

The record reflects that Petitioner did not indicate at any time that he did not understand the proceedings against him or that he did not have the ability to consult with his lawyers with a reasonable degree of rational understanding.   Moreover, nothing in the record supports such a finding.   As discussed *supra*, Petitioner was able to understand and answer the Court's questions during the *Garcia* hearing.   Although Petitioner made reference to Jesus Christ being his number one attorney, these statements do not reflect religious delusions, particularly considering that the charges against Petitioner stemmed from his role as the leader and "apostle" of a religious group that held itself out to be an evangelical Christian organization.

As to Petitioner's claim that his diabetic condition caused him to have religious delusions such that he was not competent, Mr. Weaver raised the matter of Petitioner's diabetic condition to Magistrate Judge Spaulding prior to trial.   (Criminal Case Doc. 62 at 3).   Mr. Weaver noted that he had met with Petitioner at the jail several times, that Petitioner had asked him to file a motion for release pending the trial because of his serious medical problems, that Petitioner was receiving medication for his diabetes, and that Petitioner maintained his innocence.   (*Id.* at 3-4).   In response, the Government affirmed that Petitioner was being treated for his diabetes and was receiving medication daily.   (*Id.* at 6).   Therefore, after being arrested, Petitioner was receiving medication

for his diabetes and was able to consult with his attorneys.

In addition, Mr. Joshi and Mr. Weaver told the Court at trial that they had met with Petitioner during the course of the trial, discussed with him his right to testify, and that Petitioner concurred with their advice.   (Criminal Case Doc. 183 at 27-28). Petitioner further affirmed that he had spoken with his attorneys about his right to testify and understood the decision of whether to testify was his alone.   (*Id*. at 27). Likewise, at sentencing, Petitioner argued that some of the facts in the Presentence Investigation Report ("PSR") were not supported and that he had evidence showing that the father of one of the victims had called him to come get her.   (Criminal Case Doc. 185 at 38-40).   Petitioner continued to maintain his innocence and then complained for the first time that he should have listened to the Court and the prosecutor at the *Garcia* hearing.   (*Id*. at 40).

In light of Petitioner's representations to the Court during trial and sentencing, as well as counsels' representations at trial, Petitioner had sufficient ability to consult with his attorneys with a reasonable degree of rational understanding and he had a rational and factual understanding of the proceedings against him.   Consequently, Petitioner has not established that a real, substantial, and legitimate doubt existed concerning his mental competency at the time of trial or sentencing.   Petitioner, therefore, has not demonstrated that counsel was deficient for failing to request a competency hearing, nor has he shown that prejudice resulted from counsels' failure to do so.   Likewise,

Petitioner has not established that this Court should have ordered a competency hearing. Accordingly, Ground Two is denied.

## C.     Ground Four

Petitioner asserts Mr. Weaver rendered ineffective assistance by advising him not to testify.   (Doc. 5 at 15).   In support of this ground, Petitioner maintains that Mr. Weaver advised him not to testify because his prior record would be used against him on cross-examination.   (*Id*.)   Petitioner complains that counsel should have moved to suppress the use of his prior convictions, which included convictions for burglary, larceny, criminal trespass, aiding and abetting the sale of narcotics, crimes against persons, assault, and sale of heroin.   (*Id*. at 15-16).   According to Petitioner, had counsel moved to suppress his prior convictions, he would have testified (1) that the trip to Connecticut to record the CD was not pre-planned, (2) that M.R. made several calls to her parents while in St. Thomas, (3) about how his ministry worked, (4) that he requested Mr. Weaver to give him a lie detector test, (5) that T.M.'s uncle saw him kiss T.M. on the lips and did nothing, (6) that M.R.'s parents told Petitioner that they were uncomfortable when other female "prophets" undressed for him, but they still allowed her to be around him, and (7) that M.R.'s mother contacted him to pick up M.R. when she was in Florida with her grandparents.   (Doc. 5 at 16-18).

Petitioner has not demonstrated either deficient performance or prejudice.   Mr. Weaver's advice to Petitioner was objectively reasonable.   First, Petitioner has not

established that the Court would have granted a motion in limine to prevent the Government from using some or all of Petitioner's prior convictions to attack his character for truthfulness assuming Mr. Weaver had filed such a motion.   *See* Fed. R. Evid. 609.

Furthermore, most of the testimony Petitioner indicates he would have given if he had testified is not relevant, is not exculpatory, or is cumulative.   In addition, much of his testimony would have been detrimental to his defense.   For instance, testimony that M.R.'s parents had told Petitioner that they were uncomfortable when other female "prophets" undressed for him would have supported the Government's evidence that female "prophets" in fact were undressing at meetings in contravention to the testimony given by numerous defense witnesses.   Similarly, Petitioner's testimony that T.M.'s uncle saw Petitioner kiss T.M. on the lips would have supported the Government's evidence that Petitioner engaged in sexual activity with T.M.   In light of the testimony Petitioner contends he would have given, Petitioner has not demonstrated that Mr. Weaver's advice to Petitioner not to testify was unreasonable.

Petitioner also has not demonstrated that a reasonable probability exists that the outcome of his trial would have been different had he testified.   The Government presented overwhelming evidence of Petitioner's guilt.   Furthermore, the defense called numerous witnesses to refute the Government's evidence.   Finally, Petitioner's proposed testimony is largely inadmissible, detrimental to his defense, or was presented

through the testimony of other witnesses.   Consequently, Ground Four is denied pursuant to *Strickland*.

### D.    Ground Five

Petitioner asserts Mr. Weaver rendered ineffective assistance by failing to file various motions.   (Doc. 5 at 20).   Specifically, Petitioner contends counsel should have filed a "motion for order directing taking of testimony from polygraph experts," a motion for an order directing the Government to take a polygraph test of Petitioner, and a "motion for polygraph and truth serum."[4]   (*Id.*).

Petitioner has not established deficient performance or prejudice.   Petitioner has not demonstrated that this evidence would have been admissible at trial.   Numerous courts in this circuit have found polygraph evidence insufficiently reliable and unscientific pursuant to Rule 702 of the Federal Rules of Evidence.   *See, e.g., United States v. Pavlenko*, 845 F. Supp. 2d 1321, 1324-25 (S.D. Fla. 2012); *United States v. Loaiza-Clavijo*, No. 1:08-CR-356-18-WSD, 2012 WL 529975, at *8 (N.D. Ga. Feb. 17, 2012); *United States v. Arthur*, No. 10-20753-CR, 2011 WL 3844090, at *4 (S.D. Fla. Aug. 29, 2011); *Hiscox Dedicated Corporate Member, Ltd. v. Matrix Group Ltd., Inc.*, No. 8:09-cv-2465-T-33AEP, 2011 WL 2148088, at *2 (M.D. Fla. May 31, 2011); *see also Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1284 (11th Cir. 2010) ("We have never held that it is an abuse of discretion to exclude the

---

[4] To the extent Petitioner contends in Ground Five that counsel failed to file a motion to suppress his prior convictions and a motion for a competency determination, these claims were addressed in Grounds Four and Two respectively.

opinion of a polygraph examiner."); *United States v. Henderson,* 409 F.3d 1293, 1302–03 (11th Cir. 2005) (affirming district court's determination that polygraph evidence was inadmissible under Fed. R. Evid. 702). Moreover, even assuming that such evidence would have been admissible at trial, Petitioner has not shown that this evidence would have benefited him.   In light of the overwhelming evidence presented of Petitioner's guilt, no reasonable probability exists that the outcome of the trial would have been different had counsel sought to obtain and admit polygraph testing.   Consequently, Ground Five is denied pursuant to *Strickland*.

### E.    Ground Six

Petitioner asserts that he improperly received sentencing enhancements under U.S.S.G. §§ 4A1.1(a), 4A1.2(e)(1), 4A1.2(e)(3), 2G1.3(a)(1), 2G1.3(b)(1)(B), 2G1.3(b)(2)(B), 2G1.3(b)(4)(A), 2G1.3(a)(3), 4B1.5, and 3D1.4 without a jury finding.   (Doc. 5 at 21-27). Petitioner clarifies in his Reply that he is arguing that his offense level should have been 34 and not 46.   (Doc. 20 at 17-18).   Petitioner relies on *Alleyne v. United States*, 133 S. Ct. 2151 (2013).   (Doc. 1 at 13-18).   Petitioner also argues in his Reply that trial and appellate counsel respectively rendered ineffective assistance by failing to object to the PSR on this basis and raise this issue on appeal.   (Doc. 20 at 18).

"A federal criminal defendant who fails to preserve a claim by objecting at trial or raising it on direct appeal is procedurally barred from raising the claim in a § 2255 motion, absent a showing of cause and prejudice or a fundamental miscarriage of justice."   *Rivers*

*v. United States*, 476 F. App'x 848, 849 (11th Cir. 2012).   Procedural default may be excused, however, upon a showing of cause and prejudice or a fundamental miscarriage of justice.   *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994).   Ineffective assistance of counsel can constitute cause.   *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000).   To demonstrate "prejudice," a petitioner must establish that there is "at least a reasonable probability that the result of the proceeding would have been different." *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). A defendant may show a fundamental miscarriage of justice by demonstrating that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."   *Lynn v. United States*, 365 F.3d 1225, 1234 (11th Cir. 2004).

Petitioner did not raise the substantive portion of this claim at sentencing or on direct appeal.   Thus, the substantive claim regarding the guidelines calculation is procedurally barred from review absent a showing of one of the exceptions to the procedural default.   Petitioner seemingly relies on ineffective assistance of trial and appellate counsel to establish cause and prejudice to overcome the procedural default.

Petitioner has not demonstrated cause or prejudice or a fundamental miscarriage of justice to overcome his procedural default.   "*Alleyne* held that any fact supporting an enhanced mandatory minimum sentence must be (1) alleged in the indictment and (2) admitted by the defendant or found by a jury beyond a reasonable doubt."   *United States v. Roemmele*, 589 F. App'x 470, 471 (11th Cir. 2014) (citing *Alleyne,* 133 S. Ct. at 2155).

18

Nevertheless, "*Alleyne* did not change a court's ability to apply the advisory sentencing guidelines, including making findings of fact that do not alter a statutory minimum or maximum sentence." *Id.* (citing *United States v. Charles,* 757 F.3d 1222, 1225–26 (11th Cir. 2014)).   In other words, "a district court may continue to make guidelines calculations based upon judicial fact findings and may enhance a sentence—so long as its findings do not increase the statutory maximum or minimum authorized by facts determined in a guilty plea or jury verdict."   *Charles*, 757 F.3d at 1225.

In the instant case, the enhancements applied to Petitioner only affected his sentencing guidelines range, not his statutory mandatory minimums or maximums.   *See* 18 U.S.C. §§ 1591(b), 2423(a).   Consequently, *Alleyne* is not applicable, and counsel was not deficient for failing to object to the guidelines calculation on this basis nor did prejudice result from counsel's failure to do so.   *See, e.g., United States v. Rivera,* 558 F. App'x 971, 976 (11th Cir. 2014) (concluding district court did not err in applying two level increase to offense level because it did not affect the defendant's statutory mandatory minimum or maximum sentence under 18 U.S.C. § 1591(b) as contemplated by *Alleyne*); *see also United States v. Winbush,* No. 3:12CR21-HEH, 2016 WL 5329602, at *3 (E.D. Va. Sept. 21, 2016) (concluding counsel did not render ineffective assistance by failing to object based on *Alleyne* to two level sentence enhancement in sentencing for convictions under 18 U.S.C. § 2423).   In addition, *Alleyne* was issued after Petitioner was sentenced. Counsel is not required to anticipate changes in the law.   *See United States v. Ardley*, 273

F.3d 991, 993 (11th Cir. 2001).   Likewise, Petitioner has not demonstrated that appellate counsel was deficient for failing to raise this issue or that prejudice resulted therefrom. Petitioner, therefore, has not shown cause or prejudice to overcome his procedural default, nor has he shown he is actually innocent.   Accordingly, Ground Six is denied.[5]

### F.   Grounds Seven

Petitioner contends that this Court was without jurisdiction to convict him because he is a Florida sovereign citizen.   (Doc. 5 at 28-34).   Petitioner correctly concedes in his Reply that this ground is without merit.   (Doc. 20 at 20).   District courts of the United States have original jurisdiction "of all offenses against the laws of the United States." 18 U.S.C. § 3231.   Petitioner was charged with multiple violations of federal law.   Thus, this Court had subject matter jurisdiction.   Accordingly, Ground Seven is denied.

### G.   Ground Eight

Petitioner contends that the Court erred by broadly interpreting the word "accused" in Rule 413 and 414 of the Federal Rules of Evidence.   (Doc. 5 at 35-43). According to Petitioner, he was not charged with sexual assault or child molestation as required under Rule 413 and 414 to admit other evidence of prior sexual assaults or child molestation.   (*Id*).

Respondent contends that this ground is procedurally barred from review because

---

[5] To the extent Petitioner intended Ground Six to allege separate claims of ineffective assistance of trial and appellate counsel, these claims are denied pursuant to *Strickland* for the reasons stated *supra*.

it was not raised on direct appeal. Petitioner argues that it is not procedurally barred because trial and appellate counsel were ineffective for failing to raise the issue. (Doc. 20 at 21-28).

Petitioner did not raise this issue at trial or on direct appeal. Thus, Ground Eight is procedurally barred from review absent a showing of one of the exceptions to the procedural default rule.

Petitioner has not demonstrated cause or prejudice or a fundamental miscarriage of justice to overcome his procedural default. The Government charged Petitioner *inter alia* with violating 18 U.S.C. § 2423(a) by knowingly causing the transportation of minors in interstate commerce with the intent that the minors engage in criminal sexual activity. (Criminal Case Doc. 57). District courts have concluded that Rule 413 and 414 apply to charges arising under 18 U.S.C. § 2423(a). *See, e.g., United States v. Adleta*, No. 6:13-CR-94-ORL-22GJK, 2013 WL 4734824, at *2 (M.D. Fla. Sept. 3, 2013). Likewise, appellate courts have affirmed the admission of prior acts of sexual assault or child molestation under Rules 413 and 414 against defendants charged with violating 18 U.S.C. § 2423(a). *See United States v. Batton,* 602 F.3d 1191, 1196 (10th Cir. 2010); *United States v. Sims*, 161 F. App'x 849, 850 (11th Cir. 2006). In addition, even excluding the evidence of Petitioner's prior sexual assaults, the evidence against Petitioner was overwhelming. Consequently, a reasonable probability does not exist that the outcome of Petitioner's trial or appeal would have been different had counsel raised this issue at trial or on direct appeal.

Petitioner, therefore, has not shown cause or prejudice to overcome his procedural default, nor has he shown he is actually innocent.   Accordingly, Ground Eight is denied.[6]

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1.      Petitioner's amended motion to vacate, set aside, or correct an illegal sentence pursuant to 28 U.S.C. § 2255 (Doc. 5) is **DENIED**.

2.      The Clerk of the Court shall enter judgment accordingly and is directed to close this case.

3.      The Clerk of the Court is directed to file a copy of this Order in criminal case number 6:12-cr-121-Orl-37KRS and to terminate the motions (Criminal Case Doc. Nos. 244, 245) pending in that case.

4.      This Court should grant an application for certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   Petitioner has failed to make a substantial showing of the denial of a constitutional right.[7]   Accordingly, a Certificate of Appealability is **DENIED** in this

---

[6] To the extent Petitioner intended Ground Eight to allege separate claims of ineffective assistance of trial and appellate counsel, these claims are denied pursuant to *Strickland* for the reasons stated *supra*.

[7] Pursuant to the *Rules Governing Section 2255 Proceedings for the United States*

case.

**DONE AND ORDERED** in Orlando, Florida, this 7th day of November, 2016.



ROY B. DALTON JR.
United States District Judge

Copies to:
OrlP-1 11/7
Luis E. Morales
Counsel of Record

_District Courts_, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."   _Rules Governing Section 2255 Proceedings for the United States District Courts_, Rule 11(a).